**Slip Op. 03-170**

**United States Court of International Trade**

<table>
<tr>
<td>

USEC INC. and UNITED STATES
ENRICHMENT CORPORATION,

              Plaintiffs,

    v.

UNITED STATES,

              Defendant.

</td>
<td>

Before:   Pogue, Wallach, and
            Eaton, Judges

Court No. 02-00112; and Court
Nos. 02-00113, 02-00114 and
Consol. Court Nos. 02-00219; 02-
00221, 02-00227, 02-00229, and
02-00233

</td>
</tr>
</table>

[Motions for permission for interlocutory appeal pursuant to 28 U.S.C. § 1292(d) granted.]

Decided: December 22, 2003

Fried, Frank, Harris, Shriver & Jacobson (David E. Birenbaum, Jay R. Kraemer, Mark Fajfar) for Plaintiffs and Defendant-Intervenors Urenco Limited, Urenco Deutschland GmbH, Urenco Nederland B.V., Urenco (Capenhurst) Ltd., and Urenco, Inc.; Weil, Gotshal & Manges, LLP (Stuart M. Rosen, Gregory Husisian, Jennifer J. Rhodes) for Plaintiffs and Defendant-Intervenors Eurodif S.A., COGEMA, and COGEMA, Inc.

Peter D. Keisler, Assistant Attorney General, David M. Cohen, Director, Jeanne E. Davidson, Deputy Director, Stephen C. Tosini, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, David R. Mason, Senior Attorney, Office of Chief Counsel for Import Administration, U.S. Department of Commerce, Of Counsel, for Defendant United States.

Steptoe & Johnson LLP (Sheldon E. Hochberg, Richard O. Cunningham, Eric C. Emerson) for Defendant-Intervenors and Plaintiffs USEC Inc. and United States Enrichment Corporation.

Shaw Pittman LLP (Stephan E. Becker, Nancy A. Fischer, Sanjay J. Mullick, Joshua D. Fitzhugh) for Plaintiff-Intervenors Ad Hoc Utilities Group.

## Opinion and Order

**Pogue, Judge**: In two prior opinions, this Court decided four issues that critically affect the future of this litigation.  The parties now seek permission for an immediate interlocutory appeal of the Court's decisions.  See 28 U.S.C. § 1292(d) (2000).  For the following reasons, we will grant the parties' requests.

## Background

The Court's two prior opinions in this matter arose from fifteen actions, consolidated under nine[1] court numbers, all challenging aspects of the final affirmative antidumping and countervailing duty determinations of the Department of Commerce ("the Department" or "Commerce") with regard to low enriched uranium ("low enriched uranium" or "LEU") from France, Germany, the Netherlands, and the United Kingdom[2] or the related final injury

---

[1]Only eight of those court numbers are contained in the heading of this order.  Court Nos. 02-00220 and 02-00236, consolidated as Court No. 02-00220, involve specific issues which await resolution of the "general" issues presented here for certification.  See Scheduling Order (Aug. 2, 2002); see also infra n.3.

[2]The determinations challenged in the original actions were Low Enriched Uranium from France, 67 Fed. Reg. 6,680 (Dep't Commerce Feb. 13, 2002) (notice of amended final determination of sales at less than fair value and antidumping duty order); Low Enriched Uranium from France, 66 Fed. Reg. 65,877 (Dep't Commerce Dec. 21, 2001) (notice of final determination of sales at less than fair value) ("LEU from France"); Low Enriched Uranium from France, 67 Fed. Reg. 6,689 (Dep't Commerce Feb. 13, 2002) (notice of amended

determination of the International Trade Commission ("ITC").[3]  This

Court remanded aspects of the Department's determinations in USEC

Inc. v. United States, 27 CIT __, 259 F. Supp. 2d 1310 (2003)

("USEC I").[4]   In USEC Inc. v. United States, 27 CIT __, 281 F.

Supp. 2d 1334 (2003) ("USEC II"), the Court reviewed the remand

results, affirming-in-part and reversing-in-part the Department's

remand determination.[5]

_____

final determination and notice of countervailing duty order); Low
Enriched Uranium from France, 66 Fed. Reg. 65,901 (Dep't Commerce
Dec. 21, 2001) (notice of final affirmative countervailing duty
determination); Low Enriched Uranium from Germany, the
Netherlands, and the United Kingdom, 67 Fed. Reg. 6,688 (Dep't
Commerce Feb. 13, 2002) (notice of amended final determinations
and notice of countervailing duty orders); Low Enriched Uranium
from Germany, the Netherlands, and the United Kingdom, 66 Fed.
Reg. 65,903 (Dep't Commerce Dec. 21, 2001) (notice of final
affirmative countervailing duty determinations).

[3]Low Enriched Uranium From France, Germany, the Netherlands, and
the United Kingdom, 67 Fed. Reg. 6,050 (ITC Feb. 8, 2002).  The
parties' challenges to the ITC's determinations are consolidated
as Court No. 02-00220.

[4]In the Court's original Scheduling Order for this matter, we
decided, and the parties agreed, to address initially "general
issues" affecting the Department's threshold determinations, to
be followed later by issues which are not general, such as
"challenges to the Department of Commerce's calculation results
and methods."  Scheduling Order at 5 (Aug. 2, 2002).  The cases
in which these "general issues" were before the Court were
assigned to the current panel.  See USCIT R. 77(e)(2) ("An action
may be assigned to a three-judge panel . . . when the chief judge
finds that the action raises an issue . . . [that] has broad or
significant implications in the administration or interpretation
of the law.").  Familiarity with the Court's prior opinions is
presumed.

[5]In reviewing the agency record in either an antidumping or
countervailing duty case, "the [C]ourt [of International Trade]
shall hold unlawful any determination, finding, or conclusion

No party requests a further remand of the general issues

decided by the Court in USEC I and USEC II. Rather, the parties

now seek a statement pursuant to 28 U.S.C. § 1292(d) permitting

immediate appeal.[6]

---

found . . . to be unsupported by substantial evidence on the
record, or otherwise not in accordance with law." 19 U.S.C. §
1516a(b)(1)(B)(i) (emphasis added). See also 28 U.S.C. § 1585
("The Court of International Trade shall possess all the powers
in law and equity of, or as conferred by statute upon, a district
court of the United States."). Under these statutes, this Court
has both the authority and the duty to make this final
determination after remand. To hold otherwise would be both
inconsistent with the statute and destructive of the need for
finality in litigation before the Court. Cf. Nippon Steel Corp.
v. Int'l Trade Comm'n, 345 F.3d 1379 (Fed. Cir. 2003) (holding
that the CIT abused its discretion by "interposing its own
[factual] determinations" rather than remanding to the ITC for
further fact-finding, where fact-finding was committed to the
agency by statute).

[6]In their motions, the parties do not entirely agree on the
proposed statement of the issues for appeal. The United States
states the issue as:

> Whether the United States Department of Commerce's
> determination that the foreign enricher is the appropriate
> respondent, in antidumping duty proceedings, for determining
> export price and constructed export price of Low Enriched
> Uranium imported pursuant to enrichment transactions is
> supported by substantial evidence and otherwise in
> accordance with law.

Def.'s Mot. Stat. Pursuant to 28 U.S.C. § 1292(d)(1) at 3.

Plaintiffs and Defendant-Intervenors EURODIF S.A.Compagnie
Generale Des Matieres Nucleaires and COGEMA, Inc. (collectively,
"COGEMA"), USEC Inc. and the United States Enrichment Corporation
(collectively, "USEC"), and Intervenor the Ad Hoc Utilities Group
("AHUG") state the issues as the Court's decisions on the general
issues regarding:

Jurisdiction lies under 28 U.S.C. § 1581(c) (2000) and 19 U.S.C. § 1516a(a)(2)(B)(i) (2000).

## The Issues

In USEC I and USEC II, the Court determined that the key general issues decided by the Department in this matter involved the initial applicability of the Department's "tolling" regulation,

---

1. The Department of Commerce's determination that the antidumping duty petitions and the countervailing duty petitions leading to the contested determinations were filed on behalf of the U.S. low enriched uranium ("LEU") industry; 2. The Department of Commerce's determination that the antidumping duty law is applicable to LEU delivered pursuant to enrichment transactions; and 3. The Department of Commerce's determination that the countervailing duty law is applicable to LEU delivered pursuant to enrichment transactions, and that a countervailable subsidy determination can be based on finding that prices paid pursuant to enrichment transactions have been for more than adequate remuneration.

COGEMA's, USEC's, and AHUG's Mot. Issuance Interlocutory Order at 2.

We attempt to resolve this disagreement by stating our view of the issues decided by the Court. See infra pp. 5-6.

In addition, the government's "Motion for a Statement Pursuant to 28 U.S.C. § 1292(d)(1)" contains a proposed order certifying a question for appeal. Def.'s Mot. Stat. Pursuant to 28 U.S.C. § 1292(d)(1). Conversely, the government, in replying to COGEMA's, USEC's, and AHUG's Motion also "request[s] that the Court decline to certify any issues for interlocutory appeal." Def.'s Resp. to Pl.'s Mot. Issuance Interlocutory Order at 3. The government's filings do not explain this discrepancy.

19 C.F.R. § 351.401(h).[7]  Specifically, the Court decided the following four issues:

1. On the record here, the Department's decision that the enrichment of uranium feedstock pursuant to "SWU"[8] contracts constitutes a sale, rather than a subcontracting (or "tolling") arrangement, is unsupported by substantial evidence;

2. On the record here, the Department's decision not to apply its tolling regulation to determine whether the Intervenors (the "utilities," also the "Ad Hoc Utilities Group" or "AHUG"), rather than the "enrichers," should be designated as producers of LEU is not in accordance with law;

3. On the record here, the Department's reasons for declining to apply the tolling regulation in the context of its industry support determination, and thus, its application of a different definition of "producer" from that used in establishing export or constructed export price are reasonable and therefore in accordance

---

[7]Title 19 C.F.R. § 351.401(h) states that Commerce "will not consider a toller or subcontractor to be a manufacturer or producer where the toller or subcontractor does not acquire ownership, and does not control the relevant sale, of the subject merchandise or foreign like product."  19 C.F.R. § 351.401(h).

[8]A SWU contract is a contract for a "separative work unit," a measurement of the amount of energy or effort required to separate a given quantity of feed uranium into LEU and depleted uranium at specified assays.  USEC I, 27 CIT at __, 259 F. Supp. 2d at 1314;  LEU from France, 66 Fed. Reg. at 65,884.  Under a SWU contract, a utility purchases separative work units and delivers a quantity of feed uranium to the enricher.  USEC I, 27 CIT at __, 259 F. Supp. 2d 1310, 1314.

with law; and

4. On the record here, the Department's interpretation that the statutory countervailing duty provisions reach subsidies that help to defray the costs of manufacturing imports of LEU is reasonable, and accordingly, the Department's determination that the purchase of enrichment for more than adequate remuneration may constitute a countervailable subsidy is in accordance with law.

We now consider the parties' motions.

## Discussion

Title 28 U.S.C. § 1292(d) permits interlocutory appeals, but only where "a controlling question of law is involved with respect to which there is a substantial ground for difference of opinion and [where] an immediate appeal . . . may materially advance the ultimate termination of the litigation." Id.  The instant case meets each part of this statutory three-prong test.

First, general issues one and two involve controlling questions of law because, absent further remand, these two issues effectively terminate the country-specific antidumping cases at issue here.  Conversely, the decisions on general issues three and four involve controlling questions of law because those decisions permit cases to proceed that would otherwise have been remanded or concluded.  Moreover, further proceedings in this Court will not moot these issues, and an incorrect disposition of these issues

will require reversal of a final judgment based thereon. <u>See</u> 16 Charles Alan Wright et al., <u>Federal Practice and Procedure</u> § 3930, at 423-24 (2d ed. 1996) ("There is no doubt that a question is 'controlling' if its incorrect disposition would require reversal of a final judgment . . . .").

Second, this is a case of first impression, in an area where the law is complex, and there is undeniably a substantial difference of opinion on each question.

Third, an immediate appeal may materially advance the ultimate termination of this litigation. The four issues decided by the Court define the scope and effect of the remaining questions which may be raised in the underlying fifteen actions, and which remain to be considered. Consequently, the Court's decision on these four issues sets the course for any further proceedings. Absent an immediate appeal, the parties and this Court will spend substantial resources and time on the remaining proceedings before a final appealable judgment can be made. On the other hand, an immediate appeal will significantly expedite proceedings by clarifying the course of the proceedings and enabling the parties and the Court to allocate resources efficiently. Accordingly, the Court finds that the three-prong test set forth in 28 U.S.C. § 1292(d) is satisfied here.

## Conclusion

In the circumstances present here, an immediate interlocutory appeal will best serve the interests of all parties and of the judiciary. Therefore, the Court will certify, for intermediate interlocutory appeal, the Court's decision on the four general issues decided in USEC I and USEC II.

**THEREFORE,** this action having been duly submitted for decision, and the Court, after due deliberation having rendered a decision upon the issues identified, and no party having sought further remand of the Court's decision, and the Court having determined that these issues involve controlling questions of law with respect to which there is a substantial ground for difference of opinion and that an immediate appeal from this Court's decision may materially advance the ultimate termination of this litigation; now, in conformity with that decision, it is hereby

**ORDERED** that

1. On the record here, the Department's decision that the enrichment of uranium feedstock pursuant to SWU contracts constitutes a sale, rather than a subcontracting (or "tolling") arrangement, is unsupported by substantial evidence;
2. On the record here, the Department's decision not to apply its tolling regulation to determine whether the intervenors (the "utilities," also the "Ad Hoc Utilities Group" or "AHUG"), rather than the "enrichers," should be designated as producers of LEU is not in accordance with law;
3. On the record here, the Department's reasons for declining to apply the tolling regulation in the context of its industry support determination, and thus, its application of a different definition of "producer" from that used in establishing export or constructed export price are reasonable and therefore in accordance with law; and
4. On the record here, the Department's interpretation that the statutory countervailing duty provisions reach subsidies that help to defray the costs of manufacturing imports of LEU is reasonable, and, accordingly, the Department's determination that the purchase of enrichment for more than adequate remuneration may constitute a countervailable subsidy is in accordance with law; and it is further

**ORDERED** that the Court finds, pursuant to 28 U.S.C. §
1292(d), that the Court's decision on the four issues stated
above involve controlling questions of law with respect to which
there is a substantial ground for difference of opinion and that
an immediate appeal from the Court's decision may materially
advance the ultimate termination of this litigation; and it is
further

**ORDERED** that 28 U.S.C. § 1292(d) hereby permits appeal of
these issues.


_____
Donald C. Pogue
Judge


_____
Evan J. Wallach
Judge


_____
Richard K. Eaton
Judge

Dated:     December 22, 2003
           New York, New York